UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

–v–

Javon Bussey,

Defendant.

---

18-cr-442 (AJN)

SEALED OPINION & ORDER

ALISON J. NATHAN, District Judge:

Defendant Javon Bussey has moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, this motion is GRANTED.

I. **BACKGROUND**

On January 18, 2019, Defendant waived indictment and pleaded guilty to a four-count superseding information pursuant to a cooperation agreement with the Government. The superseding information charged him with conspiring to distribute and possess with intent to distribute heroin, fentanyl, cocaine, and crack-cocaine; possessing a firearm in furtherance of drug trafficking; and distributing and possessing with an intent to distribute heroin.

On September 17, 2019, Defendant appeared before this Court for sentencing. The Court determined that, taking into account the applicable mandatory minimums, the sentencing guidelines range applicable to Defendant's conduct was 120 to 135 months' imprisonment, with a consecutive 60-month mandatory minimum sentence for Count Three of the superseding information.[1] Sentencing Tr. at 7–8. The Court then sentenced Defendant to 36 months'

---

[1] At sentencing, the Court granted the Government's motion, pursuant to 18 U.S.C. § 3553(e), that the Court sentence Defendant without regard to the applicable mandatory minimums in light of the substantial assistance Defendant provided to the Government in the prosecution and investigation of others. Sentencing Tr. at 8–9.

1

imprisonment—varying substantially from the guidelines range to take account of the history and characteristics of Defendant, his acceptance of responsibility, and his immediate and substantial cooperation with the Government—to be followed by five years of supervised release. Sentencing Tr. at 24.

Defendant, who has been detained since he pleaded guilty on January 18, 2019, is currently housed at FCI Schuylkill. His scheduled release date is August 6, 2021. On May 20, 2020, Defendant submitted an emergency motion for compassionate release to be filed under seal. *See* Br. Defendant seeks compassionate release because his underlying medical conditions make him particularly vulnerable to COVID-19. Defendant suffers from at least two conditions—asthma and hypertension—identified by the Centers for Disease Control and Prevention as placing those who suffer from them at a higher risk for severe illness from COVID-19. *See, e.g.*, Br. at 2; Opp. at 8; *see also* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html ("Moderate-to-severe asthma may put people at higher risk for severe illness from COVID-19."); *Barbecho v. Decker*, No. 20-cv-2821 (AJN), 2020 WL 2513468, at *3 (S.D.N.Y. May 15, 2020) ("[T]he CDC has supplemented its guidance regarding groups at higher risk for severe illness, which now specifically references hypertension.").

The Government opposed Defendant's motion on May 26, 2020, *see* Opp., and Defendant filed a reply in further support of his motion on May 27, 2020, *see* Reply.

## II.     DISCUSSION

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment

---

Without taking into account the applicable mandatory minimums, the sentencing guidelines range applicable to Defendant's conduct was 108 to 135 months' imprisonment. Sentencing Tr. at 7.

2

once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). The compassionate-release statute creates one such exception: It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Under the recently enacted First Step Act, defendants serving their sentence may move the Court for compassionate release. *See United States v. Gotti*, No. 02-cr-743 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020); *United States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020). Defendant has filed such a motion.

Before the Court may modify a term of imprisonment, a defendant usually must satisfy the statute's administrative exhaustion requirement. One avenue to doing so is if there is a "lapse of 30 days from the receipt of . . . a request [for the BOP to bring a compassionate release motion] by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Here, Defendant represents that he made such a request *pro se* on May 4, 2020, Br. at 2, and his counsel submitted a second request for compassionate release on his behalf on May 12, 2020, *see id.* Because 30 days have elapsed since Defendant's original request made on May 4, 2020, Defendant has satisfied the statute's administrative exhaustion requirement. Accordingly, the Court now considers his motion on the merits.

To award Defendant the relief he seeks, the Court must find that "extraordinary and compelling reasons warrant" compassionate release, 18 U.S.C. § 3582(c)(1)(A)(i), and that release is consistent with the Sentencing Commission's policy statements, *id.* § 3582(c)(1)(A).

The Court must further consider the factors set forth in 18 U.S.C. § 3553(a). *Id.* § 3582(c)(1)(A).

The Court first considers whether "extraordinary and compelling reasons warrant . . . a reduction" in sentence and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). "Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence." *United States v. Butler*, No. 19- cr-834 (PAE), 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020). The applicable policy statement, U.S.S.G. § 1B1.13, and its corresponding commentary outline four circumstances that constitute "extraordinary and compelling reasons" and thus warrant a sentence reduction.[2] One of these circumstance exists where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The policy statement also requires that the defendant not pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As this Court has explained on numerous occasions, the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals. *See, e.g.*, *United States v. Stephens*, No. 15-cr- 95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020); *Gross*,

---

[2] U.S.S.G. § 1B1.13 references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *1, 4 (S.D.N.Y. Jan. 8, 2020). The majority of courts have concluded that since passage of the First Step Act, courts may make their own assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction. *See, e.g., United States v. Millan*, No. 91-cr-685 (LAP), 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) (citing cases).

2020 WL 1673244, at *3 ("[W]e are not currently living under normal circumstances."); *accord United States v. Nkanga*, No. 18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("The country faces unprecedented challenges from the novel Coronavirus ('COVID-19') pandemic. Those detained in jails and prisons face particularly grave danger."). This is especially true for incarcerated individuals, like Defendant, who suffer from underlying medical conditions that place them at a higher risk for severe illness from COVID-19.

Contrary to the Government's contention, the extraordinary and unprecedented threat COVID-19 poses to Defendant and others like him is not diminished by the fact that there are no known cases of COVID-19 at FCI Schuylkill, where Defendant is currently serving his sentence. *See* Opp. at 8. Indeed, as other courts in this Circuit have recognized, "whether an individual BOP facility has reported a positive test is not dispositive" of the issue now before the Court. *United States v. Rountree*, 2020 WL 2610923, at *7 (N.D.N.Y. May 18, 2020); *United States v. Asaro*, 2020 WL 1899221, at *6 (E.D.N.Y. Apr. 17, 2020). Without any evidence of the testing regimen at FCI Schuykill, "statistics about the number of infections [there] are largely meaningless." *United States v. Esparza*, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020); *Asaro*, 2020 WL 1899221, at *3 ("[A]bsent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility."). And even were there evidence here that "BOP [was] testing for COVID-19 consistently enough that its statistics could be relied upon," as discussed above, "prison still poses a significant threat to individuals with health conditions . . . because they serve as incubators that accelerate the spread of the disease." *Rountree*, 2020 WL 2610923, at *7. For these reasons, courts have found extraordinary and compelling reasons warranting

compassionate release even where the facility at which the defendant was housed reported no known cases of COVID-19. *See, e.g., id.*, at *11 (granting compassionate release request from inmate incarcerated at satellite camp associated with FCI Schuylkill); *United States v. Peters*, 2020 WL 2092617, at *4 (D. Conn. May 1, 2020) (granting compassionate release request from inmate incarcerated at FCI Schuylkill).

This Court, too, concludes that the above factors, taken together, are extraordinary and compelling and are therefore sufficient to warrant compassionate release. *Accord United States v. Sawicz*, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (concluding that, because the defendant suffered from an underlying health condition, he was vulnerable to COVID-19 and thus "the risk of serious illness or death that he face[d] in prison constitute[d] an extraordinary and compelling reason militating in favor of his release").

The Court next considers whether Defendant poses "a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), and concludes that he does not. To be sure, as discussed above, the crimes of conviction were serious. However, during the time that Defendant was on pretrial release, he remained sober, successfully held several jobs, and cared for his children. *See* Bussey Sentencing Submission at 3–4. Taking particular note of Defendant's most recent conduct, the Court, which has close familiarity with all relevant facts, agrees with Defendant that his actions during the ten months that he was on pretrial release demonstrate that he does not now pose a danger to the community.

The Court finally considers the factors set forth in 18 U.S.C. § 3553(a) and concludes that granting Defendant's motion would be consistent with that statute. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence

compassionate release even where the facility at which the defendant was housed reported no known cases of COVID-19. *See, e.g., id.*, at *11 (granting compassionate release request from inmate incarcerated at satellite camp associated with FCI Schuylkill); *United States v. Peters*, 2020 WL 2092617, at *4 (D. Conn. May 1, 2020) (granting compassionate release request from inmate incarcerated at FCI Schuylkill).

This Court, too, concludes that the above factors, taken together, are extraordinary and compelling and are therefore sufficient to warrant compassionate release. *Accord United States v. Sawicz*, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (concluding that, because the defendant suffered from an underlying health condition, he was vulnerable to COVID-19 and thus "the risk of serious illness or death that he face[d] in prison constitute[d] an extraordinary and compelling reason militating in favor of his release").

The Court next considers whether Defendant poses "a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), and concludes that he does not. To be sure, as discussed above, the crimes of conviction were serious. However, during the time that Defendant was on pretrial release, he remained sober, successfully held several jobs, and cared for his children. *See* Bussey Sentencing Submission at 3–4. Taking particular note of Defendant's most recent conduct, the Court, which has close familiarity with all relevant facts, agrees with Defendant that his actions during the ten months that he was on pretrial release demonstrate that he does not now pose a danger to the community.

The Court finally considers the factors set forth in 18 U.S.C. § 3553(a) and concludes that granting Defendant's motion would be consistent with that statute. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence

to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed . . . medical care . . . in the most effective manner." 18. U.S.C. § 3553(a).

Because this Court sentenced Defendant, it is intimately acquainted with how these factors apply to his circumstances. As the Court noted at Defendant's sentencing, the underlying conduct here was serious. Mr. Bussey pleaded guilty to multiple narcotics trafficking counts, as well as possession of a firearm in furtherance of drug trafficking, and he committed the instant offenses while under criminal justice supervision. Sentencing Tr. at 21. These offenses warranted a substantial sentence in order to protect the public, promote respect for the law, and afford adequate specific and general deterrence. *Id.* at 21–22. The Court noted that the need for Defendant's sentence to afford adequate specific deterrence was especially great here due to Defendant's lengthy criminal history, which includes a prior federal narcotics conviction for which he was sentenced to 120 months' imprisonment. *See id.* at 22; PSR ¶ 45. Against these factors, the Court weighed the significant, immediate, and complete nature of Defendant's cooperation with the Government, which was central to the prosecution of co-defendant Miguel Zubiate, Sentencing Tr. at 22, as well as Defendant's difficult upbringing and the efforts he undertook to secure employment and better himself while on pretrial release, *id.* at 23–24. Taking all of these factors into account, the Court ultimately varied substantially below the guidelines range and sentenced Defendant to 36 months' imprisonment. *Id.* at 24.

At the time, the Court's sentence of 36 months reflected the seriousness of Defendant's offenses, as well as these mitigating factors, and was sufficient, but no greater than necessary, to achieve the purposes of sentencing. But the Court's analysis is different under the current circumstances. Due to the COVID-19 pandemic, the "history and characteristics of the

defendant" and the "need . . . to provide the defendant with needed . . . medical care . . . in the most effective manner," 18 U.S.C. § 3553(a), now weigh heavily in favor of Defendant's release, given the health risk that continued incarceration poses to him.

Moreover, Defendant is projected to be released in less than 14 months and has already served over half his sentence. As noted both at sentencing and in the papers in support of this motion, throughout his incarceration, Defendant has been plagued by threats as a result of his cooperation with the Government in this case. *See* Sentencing Tr. at 15–17 (describing threats while at MCC); Reply at 3 (noting that threats Defendant received at MCC have persisted at FCI Schuylkill). The time Defendant has served in prison thus far has already achieved much of the original sentence's retributive, deterrent, and incapacitative purposes. And Defendant's continued detention now poses imminent danger of serious illness or death—a circumstance that the Court did not consider when imposing its sentence originally. Having reconsidered the § 3553(a) factors to account for the foregoing, the Court now concludes that they weigh in favor of granting Defendant's motion for compassionate release.

Because all the requirements of 18 U.S.C. § 3582(c)(1)(A)(i) have been met, the Court concludes that compassionate release is warranted here.

### III. CONCLUSION

For the reasons articulated above, Defendant's motion for compassionate release is GRANTED. The Court therefore RESENTENCES Defendant to time served plus five years of supervised release under the conditions set forth in the original judgment. The mandatory conditions, standard conditions, and special conditions of supervised release from Defendant's original sentence are hereby imposed. The Court also imposes an additional condition of supervised release: Defendant is ordered to serve the remaining portion of his original term of

imprisonment, as calculated by the BOP, under home confinement.

The Government is ORDERED to RELEASE Defendant from custody immediately. It is FURTHER ORDERED that the parties shall meet and confer and submit a proposed order governing the conditions of Defendant's release, including his period of 14 days of self-isolation, no later than June 15, 2020.

The Court will maintain this Opinion and Order and the briefing associated with it under seal. By September 17, 2022, the parties shall inform the Court whether there is a continuing need to maintain these materials under seal.

SO ORDERED.

Dated: June 12, 2020
      New York, New York

ALISON J. NATHAN
United States District Judge